1
2
3
4
5
6                     UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8

9    ANGELA AKKERMAN,                  No.  2:20-cv-01379-JAM-DMC

10              Plaintiff,

11        v.                           **ORDER DENYING DEFENDANT GRANGE
                                       INSURANCE ASSOCIATION'S MOTION**
12   GRANGE INSURANCE ASSOCIATION      **FOR PARTIAL SUMMARY JUDGMENT**
     and DOES 1-10,
13
              Defendants.
14

15        I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND[1]

16        Plaintiff Angela Akkerman ("Akkerman") was working as a

17   rural postal carrier for the U.S. Postal Service on February 8,

18   2017, when the vehicle she was driving was struck head on by

19   Donald Knox.  Pl.'s Resp. to Def.'s Statement of Undisputed

20   Material Facts ("Def.'s SUMF") ¶ 2, ECF No. 13.  Title to the

21   vehicle driven by Knox was registered to Knox's son-in-law,

22   Darrin Day.  Id. ¶ 4.  Neither Knox nor Day had insurance.  Id.

23   ¶¶ 3, 4.  Akkerman, however, had personal automobile insurance

24   issued by Defendant Grange Insurance Association ("Grange").  Id.

25   ¶ 1.

26   _____

27   [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28   scheduled for January 26, 2021.

                                    1

1    Akkerman suffered significant injuries as a result of the
2   accident.  Id. ¶ 5.  The US Department of Labor, Federal
3   Employees Compensation paid Akkerman $77,201.06 for medical
4   expenses and $15,877.52 in disability payments for a total of
5   $93,078.58.  Id. ¶ 6.  Akkerman then submitted a claim to Grange
6   on April 25, 2018, requesting the policy limit of $100,000 under
7   the Uninsured Motorist provisions of the policy.  Id. ¶ 7.  On
8   June 4, 2018, Grange tendered $6,921.42 to Akkerman after
9   asserting an offset of $93,078.58 for the Workers' Compensation
10  payments she received.  Id. ¶ 9.  Akkerman, contending this
11  offset was improper under the terms of the policy, brought this
12  action for (1) breach of contract; and (2) breach of the covenant
13  of good faith and fair dealing in the Siskiyou County Superior
14  Court.  Compl., ECF No. 1-1.  Grange removed the action to this
15  Court on diversity grounds.  Notice of Removal, ECF No. 1.
16  Grange now moves for partial summary judgment on the breach of
17  contract claim arguing that by law it was entitled to offset the
18  workers' compensation from the policy limit.  Def.'s Mot. for
19  Partial Summ. J. at 1, ECF No. 9.  For the reasons set forth
20  below the Court DENIES Defendant's Motion for Partial Summary
21  Judgment.

22                    II.   OPINION

23       A.   Requests for Judicial Notice

24       Both parties have requested the Court take judicial notice
25  of Plaintiff's complaint filed in the Siskiyou County Superior
26  Court.  See Def.'s Req. for Judicial Notice, ECF No. 10; Pl.'s
27  Req. for Judicial Notice, ECF No. 11.  As a matter of public
28  record, the Court finds the complaint is a proper subject of

                              2

1  judicial notice.  See Harris v. Cty. of Orange, 682 F.3d 1126,
2  1132 (9th Cir. 2012).

3      Accordingly, the Court GRANTS Plaintiff's and Defendant's
4  Requests for Judicial Notice.  In doing so the Court takes
5  judicial notice only of the existence of the document and
6  allegations made, not the truth of the facts recited therein.
7  See Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir.
8  2001).

9      B.   Legal Standard
10     A Court must grant a party's motion for summary judgment
11 "if the movant shows that there is no genuine dispute as to any
12 material fact and the movant is entitled to a judgment as a
13 matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the
14 initial burden of "informing the district court of the basis for
15 its motion and identifying [the documents] which it believes
16 demonstrate the absence of a genuine issue of a material fact."
17 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is
18 material if it "might affect the outcome of the suit under the
19 governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
20 248 (1986).  Once the movant makes this initial showing, the
21 burden rests upon the nonmoving party to "set forth specific
22 facts showing that there is a genuine issue for trial."  Id.  An
23 issue of fact is genuine if "the evidence is such that a
24 reasonable jury could return a verdict for the nonmoving party."
25 Id.

26     C.   Analysis
27     Defendant moves for partial summary judgment on Plaintiff's
28 breach of contract claim arguing it was legally entitled to

3

1   offset the workers' compensation from its policy limits, thus

2   there was no breach of contract.  Def.'s Mot. at 9.  California

3   Insurance Code section 11580.2 mandates that every automobile

4   insurance contract contain a provision providing coverage for

5   the insured against injury by an uninsured motorist.  McGreehan

6   v. California State Auto. Ass., 235 Cal.App.3d 997, 1001.

7   Section 11580.2 also authorizes insurers to include certain

8   offsets within their policies.  Relevant here is subdivision (h)

9   which states that "[a]ny loss payable under the terms of the

10  uninsured motorist endorsement or coverage to or for any person

11  may be reduced [. . .] [b]y the amount paid and the present

12  value of all amounts payable to him [. . .] under any workers'

13  compensation law."  Cal. Ins. Code § 11580.2(h)(1).  As used in

14  the Insurance Code, the word "shall" is mandatory and the word

15  "may" is permissive.  Id. § 16.  Section 11580.2(h) thus gives

16  the parties to an insurance policy the right to contract for the

17  reduction of policy benefits by the amount of workers'

18  compensation benefits received by the insured, but it does not

19  confer the right to a deduction absent a specific provision in

20  the policy.  Waggaman v. Northwestern Security Ins. Co., 16

21  Cal.App.3d 571, 579 (Ct. App. 1971) ("By permitting the parties

22  to an uninsured motorist insurance policy to contract for a

23  reduction of the loss payable by the amount paid [. . .] under

24  any workmen's compensation law [. . .]").

25      Defendant argues that regardless of what was stated in the

26  policy, it was entitled to offset the workers' compensation as

27  allowed by section 11580.2 as those provisions "are deemed part

28  of every auto policy issued in California" and "in the event

4

1    that the terms of a written policy conflict with the statute,

2    the statute prevails over the policy terms."  Def.'s Mot. at 11.

3    This characterization over states California law and California

4    courts have repeatedly rejected this argument.  As the court in

5    Luberman's Mutual Casualty Co. v. Wyman explained, section

6    11580.2 sets the floor that insurers must provide regarding

7    uninsured motorist coverage, not a ceiling.  64 Cal.App.3d 252,

8    257 (Ct. App. 1976).  Accordingly, the rights of the parties are

9    to be determined by the terms of their policy, provided such

10   policy grants benefits equal to or greater than is required by

11   the act.  Id.  Under California law, every insurance policy will

12   thus be read so as to provide the minimum coverage required by

13   law even if the policy fails to do so.  Utah Prop. & Cas. Ins.

14   Etc. Ass'n. v. United Servs. Auto. Ass'n., 230 Cal.App.3d 1010,

15   1018 (Ct. App. 1991).  However, when section "11580.2's coverage

16   provisions are less favorable to an insured than those which the

17   insurer chose to write into its policy, the statutory provisions

18   may not be read into the policy to the insured's detriment."

19   Id.  Subdivision (h) defines one type of exclusion that is

20   permissible under the statute.  Id. at 1017.  But unless Grange

21   "has incorporated such exclusion[] expressly and plainly into

22   its policy [. . .] it may not invoke [it] to limit coverage to"

23   Plaintiff.  Id.

24       Thus, the issue is whether Defendant's offset was proper

25   under the terms of its policy.  The policy's Uninsured Motorists

26   Coverage provision states: "[w]e will not pay for any element of

27   loss if a person is entitled to receive payment for the same

28   element of loss under any workers' compensation law exclusive of

non-occupational disability benefits." Def.'s SUMF ¶ 1.  In California when interpreting an insurance contract, the primary object is to ascertain and carry out the intention of the parties.  Jarrett v. Allstate Ins. Co., 209 Cal.App.2d 804, 809 (Ct. App. 1962).  And the standard to be used is the understanding of the ordinary person.  Id.  If any ambiguity or uncertainty exists an insurance policy is construed strictly against the insurer and most liberally in favor of the insured.  Id.  The rule of strict construction against the insurer is particularly applicable where the policy provides for exceptions to or exclusions from the general import of the principal coverage clauses.  Id. at 809-10.  The burden rests on the insurer to phrase such exceptions and exclusions in clear and unmistakable language.  Id. at 810.  However, when the terms of the policy are plain and explicit the courts have no alternative but to give effect to the contract of insurance as executed by the parties.  Id.

Defendant relies on Rangel v. Interinsurance Exchange, 4 Cal.4th 1 (1992), McGreehan v. California State Automobile Ass'n, 235 Cal.App.3d 997 (Ct. App. 1999), and Jarrett v. Allstate Ins. Co., 209 Cal.App.2d 804 (1962), to support its position that under the terms of the policy it was entitled to subtract what Plaintiff received from workers' compensation from the $100,000 policy limit. As described below, Defendant's reliance is misplaced.

Jarrett involved an insurance policy which stated that "any loss payable to any person under the terms of this Section II shall be reduced by the amount paid under any workmen's

compensation law." 209 Cal.App.2d at 808.  The plaintiff argued
that under the terms of the policy the workers' compensation was
to be subtracted from his total damages.  Id. at 808.  The
court, however, disagreed, finding that the insurer properly
subtracted the workers' compensation from the policy limits.
Id. at 812.  In so holding, the court noted there was no
ambiguity and that the provision clearly referenced the loss
payable to the insured under the policy and not the loss which
he suffered at the hands of the uninsured motorist.  Id. at 811.
The court reasoned that an ordinary person would understand that
the loss referenced to was not the amount of actual damages
caused by the accident, but the amount of such damages which
were to be paid under the terms of the policy.  Id. at 812.
Accordingly, the court found it was proper for the insurer to
pay the insured only the difference between the policy limit and
the amount received from workers' compensation.  Id.

    Relying on Jarrett, Defendant argues it was entitled to
offset the $93,078.58 Akkerman received from workers'
compensation from the $100,000 policy limit, owing her only
$6,921.42.  Def.'s Mot. at 17.  The problem for Defendant,
however, is that the language of the policy at issue here is
unlike those at issue in Jarrett, McGreehan, or Rangel.  In
Jarrett, the policy stated that "any loss payable to any person
under the terms of this Section II shall be reduced by the
amount paid under any workmen's compensation law."  Jarrett, 209
Cal.App.2d at 807 (emphasis added).  And in Rangel the relevant
provision stated: "any loss payable to or for any person shall
be reduced by the amount paid and the present value of all

7

1    amounts payable to such person under any worker's [. . .]

2    compensation" 4 Cal.4th at 5 (emphasis added), which the

3    California Supreme Court noted was "nearly identical" to section

4    11580.2(h).  Id. at 17.

5         Similarly, in McGreehan the policy stated that "any amount

6    payable may be reduced by any payment or amount payable because

7    of the bodily injury under any workers' compensation law."  235

8    Cal.App.3d at 1000 (emphasis added).  The court found that the

9    term "any amounts payable" used in the policy was virtually

10   interchangeable with the term "any loss payable" used in the

11   policy in Jarrett and both were synonymous with "liability".

12   Id. at 1004.  Accordingly, the court found the parties had

13   clearly agreed that any workers' compensation would be

14   subtracted from the policy limit.  Id. at 1005.

15        Here unlike the policy at issue in the cases cited by

16   Defendant, the policy states in the Uninsured Motorist

17   provision: "[w]e will not pay for any element of loss if a

18   person is entitled to receive payment for the same element of

19   loss under any workers' compensation law."  Def.'s SUMF ¶ 1

20   (emphasis added).  Defendant argues that this "element of loss"

21   language "differs only slightly, stylistically, from the

22   statute" and policies at issue in Jarrett, McGreehan and Rangel.

23   Def.'s Mot. at 13.  The Court disagrees.

24        As the court in Jarrett noted the term "any loss payable"

25   unambiguously refers to the amount payable by the insurance

26   company up to the policy limit, not the total amount of damages

27   incurred, as the amount "payable" by the insurer would never be

28   more than the policy limit.  209 Cal.App.2d at 812.

Contrastingly, while "element of loss" is not defined in the policy, in ordinary usage "element" is defined as "one of a number of distinct or disparate units." Webster's Third New International Dictionary 734 (2002). This "element of loss" language indicates that the total loss is to be divided into parts, which could include medical costs, lost wages, disability payments and pain and suffering. If any of these elements were covered by workers compensation, then Defendant could subtract the workers' compensation amount from the policy limit for that element. However, if any elements of loss were not covered then Defendant, under the policy, would be required to pay the full amount for that element (or elements) up to the policy limit. While it appears the California courts have not interpreted such an "element of loss" provision, this reading is consistent with other jurisdictions that have. See e.g. Nat'l Ins. Ass'n v. Sockwell, 828 So. 2d 111, 132 (Ala. 2002) ("National's adjuster never even attempted to discern which of those elements of loss were not covered under Alabama workers' compensation law and, thus, which of those elements would be compensable under the National policy"); Greenfield v. Cincinnati Ins. Co., 737 N.W. 2d 112, 119 (Iowa 2007) (finding that the "elements of loss" language suggests the need to break down the loss or recovery awarded by the jury into "elements of loss" and then analyze each "element of loss" separately to determine whether the recovery for the "element" is duplicative or amounts to "the same element of loss" recovered under workers' compensation); St. Paul Fire & Marine Ins. Co. v. Emp'rs Ins. Co. of Nev., 146 P.3d 258, 263 (Nev. 2006) (finding "the elements of loss"

1    provision simply limits the coverage available to an injured

2    employee to elements of loss not already covered by the workers'

3    compensation)[2].

4         Accordingly, under the terms of the policy it was not

5    proper for Defendant to subtract the amount Akkerman received

6    from workers' compensation from the policy limit without

7    analyzing the elements of loss.  Akkerman alleges that she

8    received workers' compensation for medical bills and disability

9    but has additional elements of loss not covered.  If Akkerman

10   proves she has additional elements of loss not covered by

11   workers' compensation, Defendant under the policy is required to

12   pay those different elements up to the policy limit.  For these

13   reasons Defendant's Motion for Partial Summary Judgment is

14   DENIED.

15                        III.   ORDER

16        For the reasons set forth above, the Court DENIES

17   Defendant's Motion:

18        IT IS SO ORDERED.

19   Dated: March 12, 2021

20

21                                    _____
                                      JOHN A. MENDEZ,
22                                    UNITED STATES DISTRICT JUDGE

23

24   _____

25   [2] Defendant argues that it is improper to apply out of state
     authority to analyze a California statute.  Def.'s Reply at 2,
26   ECF No. 17.  However, the Court here is not analyzing a
     California statute but a contract provision.  To the extent these
27   cases interpret a similar clause, they are not binding but
     persuasive authority.  See Aydin Corp. v. First State Ins. Co., 18
28   Cal.4th 1183, 1190 (1998).

                              10